UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 11-165-GWU


LARRY MICHAEL MOORE,                                    PLAINTIFF,


VS.                         **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.


**INTRODUCTION**

Larry Moore brought this action to obtain judicial review of an administrative

denial decision on his applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
activity, does he have any "severe" impairment or combination
of impairments--i.e., any impairments significantly limiting his
physical or mental ability to do basic work activities?  If not, a
finding of non-disability is made and the claim is denied.

3.	The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.	At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.	If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

2

11-165  Larry Michael Moore

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher
v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2
and analyze factors such as residual functional capacity, age, education and work
experience.

One of the residual functional capacity levels used in the guidelines, called
"light" level work, involves lifting no more than twenty pounds at a time with frequent
lifting or carrying of objects weighing up to ten pounds; a job is listed in this category
if it encompasses a great deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls; by definition,
a person capable of this level of activity must have the ability to do substantially all
these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having
the capacity to lift no more than ten pounds at a time and occasionally lift or carry
small articles and an occasional amount of walking and standing.  20 C.F.R. §
404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly
diminishes his capacity to work, but does not manifest itself as a limitation on
strength, for example, where a claimant suffers from a mental illness . . .
manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional
impairment is significant, the Commissioner may still use the rules as a framework
for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);
however, merely using the term "framework" in the text of the decision is insufficient,
if a fair reading of the record reveals that the agency relied entirely on the grid.  Id.
In such cases, the agency may be required to consult a vocational specialist.
Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial
evidence to support the Commissioner's decision may be produced through reliance
on this expert testimony only if the hypothetical question given to the expert
accurately portrays the plaintiff's physical and mental impairments.   Varley v.
Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Moore, a 48- to 51-year-
old former waste material truck driver with a high school education, suffered from
impairments related to being status post left cubital tunnel release, osteoarthritis of
the bilateral hips, carotid stenosis, alcohol dependence in early remission, cannabis
dependence in sustained full remission, a mood disorder, and alcoholic neuropathy.
(Tr. 15, 20).  While the plaintiff was found to be unable to return to his past relevant
work, the ALJ determined that he retained the residual functional capacity to

5

perform light level work restricted from a full range by an inability to ever climb ladders, ropes or scaffolds, a need to avoid exposure to unprotected heights or dangerous machinery and a need to avoid work which requires driving.  (Tr. 17-18, 20).  Based upon application of Rules 202.14 and 202.21 of the Medical-Vocational Guidelines, the claimant could not be considered totally disabled.  (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

Moore asserts that the ALJ erred in relying upon the Medical-Vocational Guidelines despite the fact that he was found to have non-exertional limitations. Reliance upon the Medical-Vocational Guidelines in the presence of non-exertional limitations requires reliable evidence that the claimant's non-exertional restrictions do not significantly limit the work permitted at the exertional level found by the ALJ. Shellman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987).  The plaintiff asserts that the testimony of a vocational expert was needed for the ALJ to meet his burden of proof at step five to show that other work exists in significant numbers that the claimant can still perform despite the non-exertional restrictions.  In the present action, the ALJ cited Social Security Rulings (SSR) 83-12 and 83-14 to support his finding that the non-exertional restrictions found would not significantly erode the light level job base.  (Id.).  The court notes that SSR 83-12 addresses situations

6

11-165  Larry Michael Moore

where a claimant's exertional capacity falls between two levels and special situations involving alternate sitting or standing and the loss of the use of an upper extremity.  The non-exertional restrictions found by the ALJ in the current case are not addressed.  Thus, this Listing does not appear to support the ALJ's decision. SSR 83-14 specifically indicates that an inability to ascend and descend ladders, poles and scaffolds would not have significant impact on the ability to perform light level work.  The Listing also suggests that a limitation concerning exposure to heights and dangerous machinery would not have a great effect on the available job base.  The Listing does not address the restriction concerning driving which was also found by the ALJ.  However, as noted by the defendant, the treating physician at the Scheidler Medical Group stated in response to a request to comment upon the plaintiff's physical limitations in January of 2009, that he could return to work with no restrictions and indicated that the only thing keeping him from working would be the use of alcohol.[1]  (Tr. 678).  Under the federal regulations, the opinion of a treating source would normally be entitled to superior weight.  20 C.F.R. § 404.2527(d)(2).  Dr. Jerry McCloud, the non-examining medical reviewer, did

---

[1] The court notes that the ALJ also cited in support of his decision a February, 2004 opinion from Dr. Earl Scheidler of the Scheidler Medical Group identifying very modest physical limitations.  (Tr. 20, 222).  The plaintiff asserts that this opinion was issued in response to a Worker's Compensation claim and did not fully address all of the impairments afflicting him and, so, reliance upon it was not proper.  However, the January, 2009 opinion from the Scheidler Medical Group does not appear to have been influenced by such considerations.

indicate that the claimant would be limited to more than occasional climbing of ramps and stairs, a finding not made by the ALJ, as well as an inability to ever climb ladders, ropes or scaffolds and a need to avoid exposure to hazards.  (Tr. 706-713). Since the ALJ could have relied upon the opinion of the Scheidler Medical Group physician and found no exertional or non-exertional limitations, the ALJ's findings with regard to the non-exertional restrictions were gratuitous.[2]  Therefore, any error would appear harmless.

Moore argues that the ALJ erred by failing to find that he suffered from any mental limitations despite a finding that his mood disorder was a "severe" impairment.  Psychologist Steve Sparks examined the plaintiff in December of 2008 and noted alcohol dependence in early full remission and cannabis dependence in sustained full remission.  (Tr. 662).  While the substance abuse would cause "serious" problems, Sparks stated that based on psychological and cognitive factors alone, the claimant would have: (1) no impairment in his ability to relate to others including co-workers and supervisors; (2) no impairment of ability to understand, remember and carry out instructions; (3) would retain the mental ability to maintain attention and concentration to perform simple, repetitive tasks; (4) would have no impairment of ability to withstand the stress and pressures of day-to-day work

---

[2]The Scheidler Medical Group includes Dr. Peter A. Scheidler and Dr. Stanley E. Scheidler.  (Tr. 677).  The record is unclear which Dr. Scheidler found no restrictions on January 19, 2009.  However, either physician could be considered a treating source.

activity; and (5) would retain the mental capacity and judgment to manage funds in his best interest.  (Tr. 662-663).  These modest findings do not suggest the existence of significant mental limitations independent of substance abuse.[3]  Thus, the report of Sparks suggests that the ALJ's finding of a "severe" mood disorder was gratuitous and, so, the omission of a finding of specific mental limitations was no more than harmless error.

Vocational Specialist Dennis West evaluated Moore in the spring and summer of 2009 at the Veterans Administrative Medical Center (VAMC) and reported that he showed some frustration and decline in work under pressure and some difficulty with interacting with peers and supervisors.  (Tr. 808-809).  However, his work quality and quantity was acceptable most of the time, he maintained concentration with minimal distractions, worked with little direction, his appearance was always above necessary standards and he worked with few reports of pain or fatigue.  (Id.).  Therefore, this report also does not suggest the existence of "severe" mental limitations.

Psychologist Bonnie Katz reviewed the record in January of 2009 and opined that Moore would suffer from mental limitations independent of his substance abuse.  These restrictions included a "moderate" limitation of ability to carry out

---

[3]Public Law 104-121 now precludes the finding of disabled status when alcohol or drug abuse is a material factor contributing factor to disability.

detailed instructions, maintain attention and concentration for extended time periods, complete a normal work week and work day without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable length and number of rest periods, and interacting appropriately with the general public.  (Tr. 702-703).  As a non-examiner, Katz would be outweighed by the opinion of Sparks, the examining source, under the federal regulations which provide that "generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 404.1527(d)(1).

Moore asserts that his problems with liver cirrhosis, the residuals of left cubital tunnel release, the left shoulder and left elbow would be more limiting than found by the ALJ.  However, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  The ALJ's findings with regard to the plaintiff's physical condition were consistent with the opinion of the treating source at the Scheidler Medical Group who, as previously noted, found no work  restrictions beyond the need to avoid further use of alcohol.  (Tr. 678).  Therefore, the undersigned finds no error.

Moore argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced

in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Moore was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  While the plaintiff was found to suffer from alcohol neuropathy, the ALJ did make findings relating to no climbing of ladders, ropes or scaffolds, working at unprotected heights and working around dangerous machinery which would cover the impairment.  (Tr. 15, 17-18).  In September of 2008, Dr. Robert Cucinotta reported that a neurological examination showed no obvious focal motor or sensory deficits.  (Tr. 643).  In April of 2009, an x-ray of the pelvis and both hips made at the VAMC revealed moderate degenerative arthritis of the right hip but was otherwise unremarkable.  (Tr. 855).  The claimant indicated he could walk up to a mile in June of 2009.  (Tr. 916).  The VAMC staff reported in August of 2009 that sensation was intact in the upper and lower extremities.  (Tr. 803).  An August, 2009  x-ray of the cervical spine revealed no spinal abnormalities.  (Tr. 1028).  Also in August of 2009, testing at the VAMC revealed normal kidney and liver function.

11-165  Larry Michael Moore

(Tr. 831).  On September 11, 2009, electrodiagnostic testing revealed no sign of either left cervical radiculopathy or left thoracic outlet syndrome.  (Tr. 1028).  The testing was suggestive but not diagnostic for a generalized sensory, motor, axonal neuropathy.  (Id.).  Electrodiagnostic testing on September 14, 2009 did not meet the criteria for polyneuropathy.  (Tr. 784).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Moore's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.   A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 23rd day of February, 2012.

Signed By:

G. Wix Unthank

United States Senior Judge

12